## UNITED STATES v. CERTAIN PARCELS OF LAND IN CITY OF LINDEN, NEW JERSEY, et al.

District Court, D. New Jersey.
Dec. 22, 1939.

John J. Quinn, U. S. Atty., and William F. Smith, Asst. U. S. Atty., both of Trenton, N. J., for the government.

Charles J. Stamler, of Elizabeth, N. J., for Independent Building & Loan Ass'n of Elizabeth, N. J.

Leber & Ruback, of Newark, N. J., for Linwood Realty Co.

FORMAN, District Judge.

In July, 1936 the Director of Procurement, Treasury Department, United States Government, by public notice invited proposals for land in the City of Linden, State of New Jersey, for a post office site and federal building. In response thereto Independent Building and Loan Association, intervening petitioner, hereinafter referred to as "Independent," offered the property involved herein for $21,500. On August 31, 1936 the Director of Procurement inquired of "Independent" by telegram as follows: "* * * Advise by wire whether you will consider Eighteen Thousand Five Hundred Dollars cash for immediate acceptance subject same conditions original proposal."

In response to this inquiry "Independent" informed the Director of Procurement by telegram September 1, 1936 as follows: "* * * Directed to offer the land for Linden Post Office * * *' at Twenty Thousand Dollars cash immediate acceptance subject same conditions original proposal. * * *"

From this date there was a lapse in negotiations until December 17, 1936 when the respondent, Linwood Realty Co., hereinafter referred to as "Linwood," offered "Independent" $23,000 for the property. The government was immediately informed of this by John J. Stamler, now deceased, attorney for "Independent," in a letter written on the same day. This letter also' provided—

"In view of the fact that our Association has given some option to the Government, concerning this property, I have advised the Association not to enter into contract for the sale of this land until I first communicate with you.

"May I therefore kindly ask you to advise me at once whether the Government is still interested in that property.

"This is quite important to the Association as is does not want to lose a buyer."

No response to this letter was received from the government, and on December 26, 1936 "Independent" agreed to sell the land to "Linwood" for $23,000. Among other things the contract to sell contained these two pertinent provisions:

"It is expressly understood and agreed that whereas, the party of the first party, has heretofore, in writing, offered the above premises to the United States Government for a Post Office site, and up to the present time the United States Government has not accepted the said offer, and the party of the first part agrees to give prompt notice of the making and execution of this agreement to the United States Government and also a notice of withdrawing its offer for a post office site as aforesaid, now, therefore, should the United States Government be entitled to exercise its option and accept the offer heretofore made by the party of the first part as aforesaid, then in that case, this contract shall become null and void and the party of the first part will return to the party of the second part One Thousand ($1,000) Dollars, and the party of the second part will credit the

party of the first part with the Five Hundred ($500.00) Dollars paid to Louis D. Blick on account of commissions as aforesaid.

"And it is further agreed that notwithstanding the aforesaid provision that in the event the United States Government does not exercise its option to accept the offer of the party of the first part within thirty days from the date hereof, then in that case, this contract between the party of the first part and second part, in its entirety as herein expressed shall remain and be in full force and effect and binding upon them."

On the same day "Independent" by telegram sent the government the following message: "[The property] * * * is hereby withdrawn Stop Executed agreement with purchaser referred to in letter of December 17."

Not until December 28, 1936 did the government communicate with "Independent". This was by telegram containing the following message: "Reference your letter seventeenth instant and telegram twenty-sixth instant withdrawing proposed Linden Post Office site * * * stop joint treasury post office committee recommended acceptance your proposal in the amount of Twenty Thousand Dollars before holidays stop formal contract now in mail."

On the same day the government wrote "Independent" accepting its proposal of July as amended by department telegram dated August 31, and "Independent's" telegram of September 1, 1936. This letter was received December 29, 1936, and on that evening "Independent's" Board of Directors passed a resolution authorizing its officers to accept the "offer" of the government, and John J. Stamler was appointed to represent "Independent" "in the matter of the closing of the title to said property."

Following this action of "Independent" and on January 4, 1937 "Linwood" recorded "Independent's" contract to sell it the land.

On January 5, 1937 "Independent" sent to the government its assent to sell the land to it.

The United States Government has since taken the property by condemnation proceedings in which were joined "Independent" and "Linwood". It has paid the sum of $20,000 into the Registry of the court. This sum was not ascertained by duly appointed commissioners for that purpose, but was and is the sum for which "Independent" is willing to sell to the government. An order has been issued directing the government and "Linwood" to show cause why an order should not be made that "Linwood" has no right in the premises or the money paid into court by virtue of its contract of sale, and that "Independent" should execute a deed to the government in consideration of $20,000.

It is to be noted that at the time the government purported to accept the offer of "Independent" (telegram and letter of December 28, 1936) there was no offer in existence, for, in fact, "Independent" had withdrawn its offer on December 26, 1936. The government's telegram of December 28, 1936 recognized the withdrawal of "Independent's" offer by its telegram of December 26, 1936, and then indicated in a hazy way that before the holidays a governmental committee had *recommended* acceptance of "Independent's" proposal, not that the government prior to December 26, 1936 had accepted "Independent's" proposal. Consequently, this purported acceptance is an offer by the government to "Independent", if anything, which was accepted by "Independent" on January 5, 1937. In fact, in the recital in "Independent's" resolution of acceptance of December 29, 1936 the following significant paragraph appears: "And Whereas, it is in the interest of this Association that *the offer of the treasury Department referred to in the above telegram and letter be accepted;*" (italicizing supplied).

Prior to January 5, 1937 "Independent" had agreed to convey the property to "Linwood" (December 26, 1936), and, furthermore, the government had actual notice of this agreement (telegram of December 26, 1936) as well as constructive notice by virtue of its recordation.

There has been some argument that the contract of December 26, 1936 to convey to "Linwood" recognizes a superior right in the government. The confusion therein arises upon the belief of the draftsman, John J. Stamler, that the government held an option upon the property. In fact, none existed. The so-called reservation states "should the government be entitled to exercise its option * * * the contract shall be null and void". It is clear that the government was never "entitled" to such right. Hence, the only conclusion we can make is that the condition upon which the so-called reservation is made never in

fact existed. Therefore, it cannot be said that the contract to convey to "Linwood" expressly recognizes a paramount claim of the government.

In fine, we have here a vendor who has contracted to convey to two different vendees, one of whom is subsequent in point of time as well as cognizant, actually and constructively (the government), of the other vendee's bargain. That equity recognizes the paramount position of the latter is beyond doubt. See Hoagland v. Latourette et al., 2 N.J.Eq. 254; McVoy v. Baumann et al., 93 N.J.Eq. 638, 117 A. 725.

We, therefore, conclude that "Linwood" held a position superior to that of the government, and as between the two it would have been entitled to the property had it not been for the government's utilization of its right of eminent domain. It follows that if this right to the property had not been foreclosed, the government would have been compelled to purchase or take it from "Linwood". Thus, it appears that it is necessary to have the condemnation suit proceed to an award, because for all practical purposes "Linwood" can have no rights in the award unless it exceeds its contract price of $23,000.

An order may be taken appointing condemnation commissioners for the purpose of ascertaining the value of these premises. Afterwards, a decree may be taken adjusting the respective rights of the parties.